IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALICE KORTOR, )
 )
    Plaintiff, )
 )
v. ) Case No. 1:23CV834
 )
THE FOREST AT DUKE and )
LEE ANN BAILEY-CLAYTON, )
 )
    Defendants. )
 )
 )

ORDER

This matter is before the Court on Motions to Dismiss [Docs. #20, #24] filed by Defendants The Forest at Duke (hereinafter "TFAD") and Lee Ann Bailey-Clayton, respectively. According to the Amended Complaint [Doc. #15], Plaintiff Alice Kortor worked at TFAD as a nurse, and Defendant Bailey-Clayton was one of her supervisors. Plaintiff filed the instant matter in response to her termination from TFAD in July 2022. Defendants move to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim. The Court concludes that, Defendant TFAD's Motion to Dismiss should be denied and that Defendant Bailey-Clayton's Motion to Dismiss should be granted in part.

I.    FACTS, CLAIMS, AND PROCEDURAL HISTORY

According to the Amended Complaint, Plaintiff is a black African woman from Liberia with a "thick accent." (Am. Compl. [Doc. #15] ¶¶ 17, 40, 49, 52.) Plaintiff worked for

Defendant TFAD as a Certified Nurse Assistant and helped elderly patients suffering from, among other conditions, dementia. (Am. Compl. ¶¶ 18-19.)

Plaintiff alleges that at various points prior to January 4, 2022, she experienced acts of discrimination in the workplace which she attributed to her race or national origin. (Am. Compl. ¶ 39.) During one such incident, in November 2020, a co-worker stated that he "wished Donald Trump would get his way and ban all immigrants from America, so that [Plaintiff] would go back to Africa." (Am. Compl. ¶ 41.) Plaintiff alleges that she reported this incident to her supervisor, Defendant Lee Ann Bailey-Clayton, who is white, but TFAD never investigated the allegation. (Am. Compl. ¶¶ 6, 42.)

Plaintiff alleges that shortly after she made this report, Defendant Bailey-Clayton stopped allowing Plaintiff to work overtime shifts, while permitting other nurses to do so, and also told other supervisors not to give Plaintiff any extra shifts. (Am. Compl. ¶¶ 43-44, 60.) Plaintiff further alleges that Defendant Bailey-Clayton herself began to bully Plaintiff over her "thick accent" and made her "feel stupid." (Am. Compl. ¶¶ 40, 52.) Plaintiff alleges that she spoke directly to Defendant Bailey-Clayton to attempt to address this conduct, but Defendant Bailey-Clayton did not alter her behavior. (Am. Compl. ¶¶ 45-46.)[1]

According to the Amended Complaint, on January 4, 2022, a white patient with dementia asked Plaintiff to help her leave the nursing home in which she resided, despite

---

[1] Other than the November 2020 incident, the timeline of when this conduct occurred and how often is vague in the Amended Complaint. For example, Plaintiff alleges that she spoke to Defendant Bailey-Clayton about the discrimination on an unspecified date and, afterward, on similarly unspecified dates, "more retaliatory behavior and unsubstantiated write-ups" occurred. (See Am. Compl. ¶ 45.) However, a fair reading of the Amended Complaint would be that the alleged discrimination occurred between November 2020, which appears to be a precipitating event for the subsequent conduct by Defendants, and January 2022, when the primary allegations of the Amended Complaint occurred.

2

apparently not being permitted to leave on her own. (Am. Compl. ¶¶ 20-21.) This patient had made similar requests before and so Plaintiff "kindly informed her that she could not leave." (Am. Compl. ¶ 21.) The patient became frustrated with Plaintiff's refusal to help and, in response, falsely reported to Defendant Bailey-Clayton that Plaintiff had pushed her. (Am. Compl. ¶ 22.)

In response to this false report of physical abuse, Plaintiff "followed protocol and provided a list of nurses that were present in the room who all stated that no abuse or pushing took place." (Am. Compl. ¶ 24.) On January 10, 2022, TFAD suspended Plaintiff pending the results of an investigation into the patient's report of abuse. (Am. Compl. ¶ 25.) TFAD also notified the North Carolina Department of Health and Human Services (hereinafter "DHHS"), about the report of abuse and, on January 10, 2022, informed DHHS that TFAD's investigation of the incident had "substantiated the allegations reported by the patient and saw visible signs of injury due to alleged bruising." (Am. Compl. ¶¶ 26-27.) TFAD also "reported to DHHS that [Plaintiff] was terminated effective 11 January 2022." (Am. Compl. ¶ 28.) However, no information about TFAD's investigation was provided to Plaintiff, who believed that her continued employment would be dependent on the results of the DHHS's investigation into the incident. (Am. Compl. ¶¶ 29, 35.) Plaintiff was later informed by the nurses who witnessed the incident that they had not been questioned as part of the TFAD investigation. (Am. Compl. ¶¶ 24, 31.)

DHHS conducted its own investigation and on May 10, 2022, informed Plaintiff that it had "determined that the allegations from [the] patient were not substantiated." (Am.

Compl. ¶ 33.) Plaintiff alleges that, unlike TFAD during its investigations, DHHS contacted the nurses Plaintiff had identified as witnesses. (Am. Compl. ¶ 32.)

After the patient's report of abuse was found to be unsubstantiated by DHHS, Plaintiff sought to be restored as an employee at TFAD. However, on July 7, 2022, TFAD refused to reinstate Plaintiff and upheld her termination. (Am. Compl. ¶¶ 35-36.)

Plaintiff filed an EEOC charge alleging discrimination on October 7, 2022, and subsequently received an EEOC right-to-sue letter on July 12, 2023. (Am. Compl. ¶ 2.) Plaintiff filed suit in this Court on September 29, 2023 [Doc. #1], naming only TFAD as a defendant. TFAD moved to dismiss [Doc. #9], and Plaintiff then filed her Amended Complaint [Doc. #15], naming both TFAD and Bailey-Clayton as defendants. Plaintiff brings two counts against Defendants: (1) race discrimination under Title VII and § 1981; and (2) retaliation under Title VII and § 1981. (Am. Compl. at 1, 6-8.) Defendants have now moved for dismissal for failure to state a claim upon which relief may be granted [Docs. #20, #24].

Though presented in two separately-filed briefs, Defendants jointly raise four identical arguments for dismissal:

> 1. Plaintiff failed to timely file an EEOC charge for the conduct underlying the Title VII claims and for this reason all Title VII claims, in Counts I and II, should be dismissed (TFAD Br. [Doc. #21] at 4-7; Bailey-Clayton Br. [Doc. #25] at 4-7);
>
> 2. Plaintiff's allegations of race discrimination are conclusory and therefore the Title VII and § 1981 claims in Count I should be dismissed (TFAD Br. at 7-9; Bailey-Clayton Br. at 7-10);
>
> 3. Plaintiff failed to allege that race was a "but for" cause of her treatment at work and therefore the § 1981 claims, in Counts I and II, should be dismissed (TFAD Br. at 9-11; Bailey-Clayton Br. at 10-11); and

4

4. Plaintiff did not sufficiently plead a plausible link between her protected activity and subsequent retaliation and therefore the Title VII and § 1981 claims in Count II should both be dismissed (TFAD Br. at 11-14; Bailey-Clayton Br. at 11-14).

In addition to these joint arguments, Defendant Bailey-Clayton individually argues that:

5. Any Title VII claims against her should be dismissed because she is not an employer and thus cannot be held liable under that Title. (Bailey-Clayton Br. at 3-4.)

II. LEGAL STANDARD

The Supreme Court has held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 515 (2002). Instead, that "the ordinary rules for assessing the sufficiency of a complaint apply." Id. at 511. Under the ordinary rules that now apply, a plaintiff fails to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Woods v. City of Greensboro, 855 F.3d 639 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." Twombly, 550 U.S. 544, 555, 570 (2007).

5

III. DISCUSSION

   A. The Timeliness of Plaintiff's EEOC Charge

Title VII requires a plaintiff to file her threshold charge of discrimination with the EEOC within a specified period after the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); EEOC v. Com. Office Prods. Co., 486 U.S. 107, 110 (1988). The designated time period is 180 days, although in limited circumstances not relevant here that period of time is extended to 300 days. 42 U.S.C. § 2000e-5(e)(1); Com. Office Prods., 486 U.S. at 111. An untimely-filed charge is not a jurisdictional bar but rather is "like a statute of limitations, . . . subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

Defendants argue that Plaintiff's EEOC charge was untimely on the assumption that "the Amended Complaint alleges Plaintiff was terminated on January 11, 2022," and that this was thus the date of the discriminatory act for the purposes of the 180-day clock. (TFAD BR. at 6; Bailey-Clayton Br. at 6.) Were it true that the Amended Complaint set January 11, 2022, as the undisputed termination date, then Plaintiff's EEOC charge—first filed 269 days later on October 7, 2022—would be untimely. However, the Amended Complaint does not allege that Plaintiff was terminated on January 11, 2022. Rather, based on the allegations in the Amended Complaint, while Plaintiff later learned that Defendants had reported to DHHS that her termination date was January 11, 2022, this was not communicated to Plaintiff at the time. According to the Amended Complaint, Defendants merely told Plaintiff that she was being suspended—as opposed to terminated—pending the results of DHHS's investigation, not that of TFAD. (Am. Compl. ¶¶ 21, 25.) See Price v. Litton Bus. Sys., Inc., 694 F.2d 963, 965 (4th

6

Cir. 1982) ("[T]he 180-day period began to run [when plaintiff] was told he would be relieved of his position . . . .") (emphasis added). Plaintiff's termination was only communicated to her, according to the Amended Complaint, on July 7, 2022, when she attempted to be reinstated—not rehired—following the presumed end of her investigatory suspension after DHHS found the report against her to be unsubstantiated. (Am. Compl. ¶¶ 35-36.)

Thus, unlike situations where an employee is informed of her termination date and continues working until that time, or is terminated and only later discovers the discriminatory basis for that termination, Plaintiff here was, under a fair reading of the Amended Complaint and regardless of what TFAD told others beside her, terminated on July 7, 2022. Cf. Hamilton v. 1st Source Bank, 928 F.2d 86, 87-89 (4th Cir. 1990) (holding that the 180-day clock beings to run on either the date of the discriminatory action or when plaintiff learns of the action, regardless of when a plaintiff learns of the effects or causes of the action and specifically noting that "[t]o the extent that notice enters the analysis, it is notice of the employer's actions"). With July 7, 2022, as Plaintiff's termination date, she timely filed an EEOC charge three months later on October 7, 2022, well within the 180-day limit. (Am. Compl. ¶ 2.)

To the extent Defendants contend that they told Plaintiff of her termination on January 11, 2022—or that Plaintiff otherwise learned of the termination on or around that date—such facts are outside of the allegations of the Amended Complaint. Any dispute over the date of termination will therefore best be resolved in a Motion for Summary judgment following discovery.[2]

---

[2] Alternatively, even if the Amended Complaint can be read to allege that TFAD made an internal determination to terminate Plaintiff on January 11, 2022, assuming, as the Court must on a motion to dismiss, that the Amended Complaint is accurate that this fact was not communicated to Plaintiff until July 7, 2022, equitable tolling would excuse at least the time between January and July 2022. In EEOC cases, equitable tolling is

B.  Facial Sufficiency of Plaintiff's Allegations of Discrimination

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a).[3] An employer will be held liable for racial or national origin discrimination if "a protected characteristic [is] a 'motivating factor' in an employment decision." E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 773 (2015) (quoting 42 U.S.C. § 2000e-2(m)).

In support of dismissal, Defendants argue that the Amended Complaint's allegations are conclusory and fail to adequately allege race discrimination in Count I under both Title VII and § 1981 because they amount to "little more than speculation that the alleged adverse treatment of Plaintiff was race-based." (TFAD Br. at 8; Bailey-Clayton Br. at 8.) However, at this preliminary stage, Plaintiff has alleged a long history of bullying at work based on her national origin, with specific reference to fellow employees and her supervisor, Defendant Bailey-Clayton, mocking her for her strong African accent. (Am. Compl. ¶¶ 17, 40, 43, 49,

---

appropriate where "the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Price, 694 F.2d at 965; accord Belton v. City of Charlotte, 175 F. App'x 641, 653 (4th Cir. 2006). At this preliminary stage of the case, based on the allegations in the Amended Complaint, failing to tell an employee that she had been terminated is an action that any employer could not help but understand would cause that employee to delay filing any EEOC charges until, at the earliest, she learned of the termination.

[3] Plaintiff asserts identical claims under 42 U.S.C. § 1981. "Most [42 U.S.C.] § 1981 actions involve employment discrimination claims, and courts analyze such cases employing the same statutory scheme used in cases brought under Title VII." Baltimore-Clark v. Kinko's Inc., 270 F. Supp. 2d 695, 698-99 (D. Md. 2003) (citing Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000); Gairola v. Commonwealth of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285-86 (4th Cir. 1985)).

52.) In one particular incident, Plaintiff complained to her supervisor that another employee had told her that he wished that immigrants like Plaintiff would be banned from the country and that Plaintiff in particular would "go back to Africa." (Am. Compl. ¶ 41.) Plaintiff reported this conduct to Defendant Bailey-Clayton who, rather than investigate the incident, began withholding work assignments from Plaintiff that were nevertheless offered to other employees and eventually herself began bullying Plaintiff and mocking her "thick accent." (Am. Compl. ¶¶ 43-46, 60.) Fairly read, this treatment continued until Plaintiff was ultimately terminated on the basis of an allegation made against Plaintiff which an independent state investigation determined was unsubstantiated. (Am. Compl. ¶¶ 35-36.)

These allegations plausibly allege that Plaintiff's race and national origin directly resulted in her being treated differently from other employees and that she was specifically targeted for adverse treatment because of these characteristics, resulting eventually in her termination for pretextual reasons. Therefore, Defendants' Motion to Dismiss on this basis will be denied, but it will ultimately be Plaintiff's burden to present evidence to establish that the termination decision was the result of race or national origin discrimination.

C. Race as a "But-For" Cause Under § 1981

Congress passed § 1981 to "guarantee[ ] to all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" Nadendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022) (quoting Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1017 (4th Cir. 1999)). Section 1981 provides that "to make and enforce contracts" includes "making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.

"To succeed on a § 1981 claim, 'a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.'" Nadendla, 24 F.4th at 305 (quoting Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006)). A plaintiff must also show that the interference with a contractual interest would not have happened "but for" the plaintiff's race. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 341 (2020); see also Nadendla, 24 F.4th at 305. More specifically stated, to state a § 1981 race-discrimination claim, a plaintiff must allege facts making it plausible "that, but for race, [he] would not have suffered the loss of a legally protected right" under the statute. Comcast Corp., 589 U.S. at 341; see also Ali v. BC Architects Engineers, PLC, 832 F. App'x 167, 171 (4th Cir. 2020) (per curiam) (unpublished), as amended (Oct. 16, 2020).[4] Thus, to survive a motion to dismiss in the context of an employment-related claim, a plaintiff must allege facts that, if accepted as true,

---

[4] As observed by the Supreme Court in a case decided after the decision in Comcast, "but for" causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." Bostock v. Clayton County, 590 U.S. 644, 656 (2020).

> In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause. This can be a sweeping standard. Often, events have multiple but-for causes. So, for example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision. . . . When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.

Id. (internal citations omitted).

allow the court to draw a reasonable inference that "but for" her race and national origin, she would not have been terminated.

Defendants argue that Plaintiff has failed to adequately allege that race was a but-for cause of Plaintiff's differential treatment because she has not shown that members of other groups were treated differently in situations where there were allegations of patient abuse. More specifically, Defendants argue that because the Amended Complaint acknowledges that Plaintiff's termination followed an allegation of abuse which TFAD investigated, this allegation of abuse, not Plaintiff's race, was the real basis for termination, regardless of Plaintiff's race or national origin. (TFAD Br. at 10-11; Bailey-Clayton Br. at 11.) However, at least on a motion to dismiss, the Amended Complaint adequately alleges that this report of abuse became a pretext for terminating Plaintiff and thus was not a valid reason for termination that would preclude Plaintiff's race being a but-for cause of her loss of employment.

While the Amended Complaint acknowledges that (1) a patient reported that Plaintiff abused her and (2) TFAD investigated the abuse and terminated Plaintiff as a result, it also alleges that (3) TFAD did not interview any witnesses to the alleged abuse and rather conducted a perfunctory investigation, (4) that DHHS more thoroughly investigated the complaint and found that it was unsubstantiated, and (5) despite the DHHS's conclusion, TFAD nevertheless stood by its own cursory investigation and ignored the DHHS investigation in order to uphold its decision to terminate Plaintiff. The Amended Complaint further alleges a history of race-related and national-origin-related harassment as the basis for contending that the investigation was a pretext for discrimination based on race. Thus, rather

11

than acknowledging that Plaintiff was duly fired on an allegation of abuse, the Amended Complaint plausibly alleges that, following a history of race and national-origin harassment at work, Plaintiff was fired on an unfounded and pretextual basis which TFAD unreasonably failed to investigate. Whether Plaintiff's allegations are ultimately substantiated through discovery and are supported in the face of a motion for summary judgment will be a separate issue after discovery. At this stage, the allegations in the Amended Complaint are sufficient to plausibly allege that Plaintiff's race—and not an unfounded allegation of abuse—was the but-for cause of her termination in this case. Therefore, Defendants' Motions to Dismiss on this ground will be denied.

> D. Attenuation in Retaliation Claim

Title VII's anti-retaliation provision imposes liability on an employer who discriminates against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff asserting a retaliation claim under Title VII must establish: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. DeMasters v. Carilon Clinic, 796 F.3d 409, 416-17 (4th Cir. 2015) ("Title VII forbids employment discrimination based on 'race, color, religion, sex, or national origin,' 42 U.S.C. § 2000e-2(a), and its anti-retaliation provision serves to prevent [ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." (internal quotation omitted)). A plaintiff can prove illegal retaliation under § 1981 in the same way as under Title VII. Bryant v. Aiken

Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) ("A plaintiff can prove illegal retaliation under Title VII or § 1981 if he shows that (1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of his employer; and (3) the employer took the adverse action because of the protected activity." (internal brackets and quotation omitted)).

Retaliation claims involve traditional principles of "but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). However, as noted above, "[a] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss . . . , [but] factual allegations must be enough to raise a right to relief above the speculative level." Rigg v. Urana, 113 F. Supp. 3d 825, 829 (M.D.N.C. 2015).

In support of dismissal, Defendants argue that there is an insufficient causal link between what Plaintiff alleges is protected activity—reporting a co-worker's derogatory comments toward her—and the ultimate employment action—Plaintiff's termination. Because the incident with the co-worker occurred in November 2020 and Plaintiff was not ultimately terminated until 2022, Defendants argue that too much time passed between the two dates to reasonably allege a causal connection. However, as written, the Amended Complaint makes clear that the initial, and apparently immediate, response from Defendants in 2020 was to limit Plaintiff's shifts and overtime availability in addition to mocking her African accent and otherwise "bullying" her. (Am. Compl. ¶¶ 40-46, 53.) A reasonable inference from the Amended Complaint is that these activities occurred immediately after

13

Plaintiff reported her co-worker (Am. Compl. ¶¶ 41-45), and continued until the date of her termination (Am. Compl. ¶ 46).

Defendants acknowledge that this conduct by an employer could be considered adverse employment actions (TFAD Br. at 13-14; Bailey-Clayton Br. at 13-14), but argue that allegations about the nature and timing of this conduct are insufficiently pled to allow an inference of causation. However, as noted immediately above, the Amended Complaint fairly alleges that upon reporting a co-worker's national-origin-based comments to a supervisor, Plaintiff's employment privileges and work environment changed for the worse, and that these conditions of employment continued through to her termination nearly two years later. For this reason, Defendants' Motion to Dismiss with respect to the retaliation claim will be denied. Again, however, it will be Plaintiff's burden submit evidence to support these contentions and sufficiently raise a causal link between her report and her ultimate termination, and issues of attenuation can be considered further on motions for summary judgment.

E. <u>Title VII Claims Against Supervisor Bailey-Clayton</u>

Finally, Defendant Bailey-Clayton moves to dismiss any Title VII claims against her on the grounds that only an employer may be sued under Title VII and she is not an employer. (Bailey-Clayton Br. at 3-4.) In response, Plaintiff rightly concedes that she is not bringing any Title VII claims against Defendant Bailey-Clayton. (Pl.'s Resp. to Bailey-Clayton [Doc. #27] at 6.) <u>Lissau v. S. Food Serv., Inc.</u>, 159 F.3d 177, 181 (4th Cir. 1998) (finding that "Congress only intended employers to be liable for Title VII violations" and "individual liability would improperly expand the remedial scheme crafted by Congress"); <u>accord</u> <u>Scott v. Md. State Dep't of Lab.</u>, 673 F. App'x 299, 308 (4th Cir. 2016). Thus, to the extent that the Amended

Complaint may be read as containing any such claims against Defendant Bailey-Clayton, any such claims will be dismissed.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant TFAD's Motion to Dismiss [Doc. #20] is DENIED, and that Defendant Bailey-Clayton's Motion to Dismiss [Doc. #24] is GRANTED IN PART to the extent that any Title VII claims against Defendant Bailey-Clayton are DISMISSED.

IT IS FURTHER ORDERED that this case is set for an Initial Pretrial Conference on Thursday, October 24, 2024 at 9:30 a.m. at the Federal Courthouse in Winston-Salem, North Carolina.

This, the 30th day of September, 2024.

／s／ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge